**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN WITT et al.,**

                              **Plaintiffs,**

                    **v.**

**LARRY SOLLECITO et al.,**

                              **Defendants.**
_____

|  |  |
|---|---|
| | **1:19-cv-676** |
| | **(GLS/CFH)** |

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Thorn Gershon Tymann &
Bonanni                              KYLE N. KORDICH, ESQ.
5 Wembley Court                      ERIN P. MEAD, ESQ.
P.O. Box 15054
Albany, NY 12205


**FOR THE DEFENDANTS:**
*Larry Sollecito, Joanne*
*Sollecito & John Doe*
Hinman, Straub Law Firm              JAMES T. POTTER, ESQ.
121 State Street
Albany, NY 12207


*DeRaven Design & Drafting,*
*Roxanne Osborne-Heller &*
*David J. Hopper, Architects*
Heslin, Rothenberg Law Firm          ANNETTE I. KAHLER, ESQ.
5 Columbia Circle                    SUSAN E. FARLEY, ESQ.
Albany, NY 12203


Hinman, Straub Law Firm              JAMES T. POTTER, ESQ.
121 State Street

Albany, NY 12207

**Gary L. Sharpe**
**Senior District Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>

### I. <u>Introduction</u>

Plaintiffs John Witt and Witt Construction, Inc. bring this action against defendants Larry Sollecito, Joanne Sollecito, DeRaven Design & Drafting, Roxanne Osborne-Heller, David J. Hopper, Architects, and John Doe pursuant to the Copyright Act,[1] the Lanham Act,[2] and New York state law.  (*See generally* Am. Compl., Dkt. No. 24.)  Now pending are defendants' motions for judgment on the pleadings, (Dkt. Nos. 31, 35), and plaintiffs' cross-motion to amend their amended complaint, (Dkt. No. 39). For the reasons that follow, defendants' motions are granted in part and denied in part, and plaintiffs' cross-motion is granted.

---

[1] *See* 17 U.S.C. §§ 101-1401.

[2] *See* 15 U.S.C. §§ 1051-1141n.

## II.  **Background**

**A.**  **Facts**[3]

Witt is the owner of Witt Construction, a business focused on "designing, building[,] and servicing residential, commercial, and multi-family buildings."  (Am. Compl. ¶ 1.)  In June 2014, plaintiffs entered into an agreement with the Sollecitos, whereby plaintiffs were to design and plan the construction of a new home.  (*Id.* ¶ 13.)  The agreement was broken down into three parts: (1) plaintiffs were obligated to provide the Sollecitos with a preliminary design of the home, including "site investigation . . . and production of preliminary specifications and drawings of the home"; (2) plaintiffs were then obligated to provide drawings and final blue prints, and the parties were to enter into a construction contract with certain warranties and building specifications; and (3) in part three, "additional services" were to be offered.  (*Id.* ¶¶ 14-16.)  "[A]ll designs, drawings specification[,] and documents remained the exclusive property of [plaintiffs]."  (*Id.* ¶ 17.)

Plaintiffs fulfilled part one of the agreement by providing the

_____

[3] The facts are drawn from plaintiffs' amended complaint, (Dkt. No. 24), and presented in the light most favorable to them.

3

Sollecitos with preliminary drawings and designs, but the Sollecitos did not fulfill their obligation under the second part of the agreement, as they "never entered into a contract with [plaintiffs] for the construction of the home in accordance with the drawings and designs." (*Id.* ¶ 21-22.) The Sollecitos were not authorized to use plaintiffs' drawings, designs, or works, which all remained their property per the original agreement. (*Id.* ¶ 23.) Nevertheless, in June 2016, Witt observed that the design of the Sollecitos' new home was "nearly identical" to the design and plans created by plaintiffs. (*Id.* ¶¶ 24, 32.)

Ultimately, Witt learned that his designs, drawings, and plans had been used by the Sollecitos to "develop, modify, and construct the[ir] residential home." (*Id.* ¶ 25.) Plaintiffs allege that the Sollecitos hired DeRaven, the owner and principal of which is Osborne-Heller, as the draftsman of the home, and they provided DeRaven with plaintiffs' designs, drawings, and other "works." (*Id.* ¶¶ 4, 27-28.) The Sollecitos and DeRaven then hired Hopper as architect, and Doe as contractor, to design, plan, and build the home using plaintiffs' designs. (*Id.* ¶¶ 29-30.) Plaintiffs allege that all defendants had access to the designs. (*Id.* ¶ 34.)

In May 2019, plaintiffs "filed for copyright registration of the designs

4

and drawings." (*Id.* ¶ 19.)  Plaintiffs allege that these designs are

"distinctive and proprietary" because they (1) "are based on many hours of

work by Witt"; (2) "were developed to incorporate open floor plans and

modern design concepts within a buildable area of very specific geometry";

and (3) are "based upon early [twentie]th century architecture," and involve

brickwork, windows, siding, dimensions, and "geometries" that are "unique

to . . . Witt's artistic sense of design," and were "carefully crafted together

by . . . Witt . . . to create a unique home for [the Sollecitos]." (*Id.* ¶ 20.)

## B.   Procedural History

Plaintiffs filed their initial complaint on June 5, 2019, (Compl., Dkt.

No. 1), and the amended and operative complaint on October 1, 2019,

(Am. Compl.)  Plaintiffs bring the following ten causes of action: (1) a

copyright infringement claim against all defendants; (2) a contributory

copyright infringement claim against all defendants; (3) a vicarious

copyright infringement claim against all defendants; (4) a Lanham Act

claim against all defendants; (5) a breach of contract claim against the

Sollecitos; (6) a claim pursuant to the New York Unfair Trade Practices

Act[4] against all defendants; (7) an unjust enrichment claim against all

---

[4] *See* N.Y. Gen. Bus. Law §§ 349-350-f-1.

defendants; (8) a conspiracy claim against all defendants; (9) a tortious

interference with business relation/contract claim against DeRaven,

Osborne-Heller, Hopper, and Doe; and (10) a tortious interference with

economic advantage claim against all defendants.  (*See generally id.*)

Defendants filed motions for judgment on the pleadings pursuant to

Fed. R. Civ. P. 12(c),[5] (Dkt. Nos. 31, 35), and plaintiffs cross-moved to

amend their amended complaint, (Dkt. No. 39).

## III.  Standards of Review

### A.  Motion for Leave to Amend

Rule 15 allows a party not otherwise permitted to amend its pleading

to do so with leave of the court.  *See* Fed. R. Civ. P. 15(a)(2).  The Rule

mandates that "[t]he court should freely give leave when justice so

requires."  *Id.*  Barring "futility, undue delay, bad faith or dilatory motive,

repeated failure to cure deficiencies by amendments previously allowed, or

---

[5]  Although the Sollecitos included a blanket request at the end of their moving brief that the court "dismiss with prejudice all claims asserted against them," (Dkt. No. 35, Attach. 2 at 23), they failed to provide any analysis or rationale as to why plaintiffs' breach of contract claim, specifically, should be dismissed.  The Sollecitos attempt to remedy this by including such analysis on reply, (Dkt. No. 41 at 8-9), but "[i]t is well-established that arguments may not be made for the first time in a reply brief."  *See Zirogiannis v. Seterus, Inc.*, 221 F. Supp. 3d 292, 298 (E.D.N.Y. 2016), *aff'd*, 707 F. App'x 724 (2d Cir. 2017) (internal quotation marks and citation omitted).  Accordingly, the Sollecitos' motion for judgment on the pleadings as it pertains to plaintiffs' breach of contract claim is denied.

undue prejudice to the non-moving party," leave should generally be granted.  *Burch v. Pioneer Credit Recovery*, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (citation omitted).  "The non-moving party bears the burden of establishing why leave to amend should not be granted."  *Linares v. Richards*, No. 08-CV-3243, 2009 WL 2386083, at *9 (E.D.N.Y. Aug. 3, 2009) (citations omitted).

## B.   Motion for Judgment on the Pleadings

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim."  *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted).  The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

## IV.  Discussion

## A.   Copyright Infringement Claims

Plaintiffs bring claims of copyright infringement, contributory copyright infringement, and vicarious copyright infringement against all

7

defendants.  (Am. Compl. ¶¶ 36-52.)

"In order to make out a claim of copyright infringement for an architectural work . . . a plaintiff must establish three things: 1) that his work is protected by a valid copyright, 2) that the defendant copied his work, and 3) that the copying was wrongful."  *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 100 (2d Cir. 2014) (citations omitted).  In addition, registration is "a precondition to filing a copyright infringement claim."  *In re Indu Craft, Inc.*, 749 F.3d 107, 113 n.9 (2d Cir. 2014) (citation omitted).  A certificate of registration is sufficient.  *See Sorenson v. Wolfso*n, 96 F. Supp. 3d 347, 361 (S.D.N.Y. 2015) ("[A] certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." (internal quotation marks and citation omitted)).

In arguing that they are entitled to judgment as to plaintiffs' copyright infringement claim, defendants contend that plaintiffs lack standing to bring such a claim, the claim is foreclosed by the statute of limitations, the drawings in question do not constitute original works protected by the Copyright Act, and plaintiffs' drawings are not substantially similar or nearly identical to defendants' drawings.  (Dkt. No. 31, Attach. 1 at 8-17; Dkt.

8

No. 35, Attach. 2 at 7-16.)

As an initial matter, in support of their motions for judgment on the

pleadings, defendants submitted a declaration by Osborne-Heller, (Dkt.

No. 31, Attach. 2), and L. Sollecito, (Dkt. No. 35, Attach. 1), and, in

opposition to the motions, plaintiffs filed two affidavits and numerous

exhibits thereto, most of which are unrelated to their cross-motion to

amend, (Dkt. No. 39, Attachs. 1-22).  To the extent that a document is not

a public record such that the court may take judicial notice of it, not

attached to the amended complaint, and/or not incorporated by reference

to the amended complaint, the court has not considered it in ruling on the

instant motions.  *See Hauschild v. United States Marshals Serv.*, No.

13-CV-5211, 2018 WL 3014095, at *4 (S.D.N.Y. June 15, 2018), *aff'd and

remanded sub nom. Atterbury v. United States Marshals Serv.*, 941 F.3d

56 (2d Cir. 2019) (holding that documents that were not attached, or

incorporated by reference, to the complaint, and a "declaration [that]

contain[ed] factual assertions that touch[ed] on the merits of the action,"

could not be considered in connection with the defendant's Rule 12(c)

motion).  And while the court could convert the instant motions to motions

for summary judgment, and consider the evidence submitted outside of the

9

pleadings and not otherwise falling into the realm of judicial notice, *see* Fed. R. Civ. P. 12(d), it declines to do so given the nascent nature of this action.  *See Toliver v. City of N.Y.*, No. 10 Civ. 3165, 2012 WL 7782720, at *4-5 (S.D.N.Y. Dec. 10, 2012).

   *1. Standing and Plaintiffs' Cross-Motion to Amend*

   Defendants argue that plaintiffs lacked standing to bring their copyright claim because plaintiffs only allege that a copyright application was filed prior to commencement of the action, and not that the copyright was registered.  (Dkt. No. 31, Attach. 1 at 8-11; Dkt. No. 35, Attach. 2 at 7.) In response, plaintiffs cross-move for leave to file a second amended complaint in order to add the following clause: "the subject works were registered with the United States Copyright office on May 10, 2019. . . . Witt was advised in writing . . . that the works were registered on May 13, 2019[,] and Witt received a Certificate of Registration from the Copyright Office on May 20, 2019.  The effective date on the Certificate of Registration is May 10, 2019."  (Dkt. No. 39, Attach. 12 at 4.)

   The court sees no reason to deny plaintiffs' cross-motion to amend, as no discovery has been conducted in this case, and the court is not convinced that plaintiffs acted in bad faith.  *See Burch*, 551 F.3d at 126.

10

Moreover, amendment is not futile because, accepting plaintiffs' allegations as true, the copyright registration was made in May 2019, prior to commencement of this action, and, thus, the precondition for copyright infringement claims is satisfied at this stage.  *See Wolfso*n, 96 F. Supp. 3d at 361-62.  Further, the court disagrees with defendants, (Dkt. No. 31, Attach. 1 at 10), that allowing plaintiffs' proposed amendment would permit plaintiffs to amend their complaint to assert an intervening registration, as, again, the proposed second amended complaint alleges that the registration was made prior to commencement of the action.

Accordingly, plaintiffs' cross-motion to amend is granted, and defendants' motions for judgment on the pleadings on the basis of lack of standing are denied.

### 2.    *Statute of Limitations*

Next, defendants contend that plaintiffs' copyright infringement claim is foreclosed by the statute of limitations, as the alleged infringement was discovered by plaintiffs on June 9, 2016,[6] and the amended complaint was filed on October 1, 2019.  (Dkt. No. 31, Attach. 1 at 11-12; Dkt. No. 35,

---

[6] Defendants concede for the purposes of the pending motions that the statute of limitations began to run on June 9, 2016.  (Dkt. No. 40 at 2 n.4.)

Attach. 2 at 8.)  In response, plaintiffs argue that the original complaint was filed on June 5, 2019, which is plainly within the three-year statute of limitations.  (Dkt. No. 39, Attach. 23 at 9-10.)  The court agrees with plaintiffs.

The statute of limitations for copyright claims is three years.  *See* 17 U.S.C. § 507(b).  Thus, plaintiffs brought a timely copyright claim against defendants, even if just barely.  Moreover, the amended complaint and the proposed second amended complaint relate back to the date of plaintiffs' original complaint for statute of limitations purposes, as, accepting plaintiffs' allegations as true, the copyright registration was made prior to the filing of their original complaint, and the amendments merely rectify deficiencies as to a claim originally asserted.  *See* Fed. R. Civ. P. 15(c)(1)(B) ("An amendment to a pleading relates back to the date of the original pleading when: . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."); *Malibu Media, LLC v. Doe*, No. 18-CV-10956, 2019 WL 1454317, at *2 (S.D.N.Y. Apr. 2, 2019) (noting that if a complaint alleging copyright infringement fails to comply with the registration requirement, but such requirement was satisfied prior to filing,

"then the defect may . . . be cured by an amended complaint . . . [and] the amended complaint would plainly relate back to commencement of the suit" (internal quotation marks and citation omitted)).

   3.   *Originality*

Defendants also argue that plaintiffs' copyrighted designs and plans are not original works protected by the Copyright Act.  (Dkt. No. 31, Attach. 1 at 12-14; Dkt. No. 35, Attach. 2 at 9-12.)  "A fundamental rule of copyright law is that it protects only original works of authorship, those aspects of the work that originate with the author himself."  *Zalewski*, 754 F.3d at 102 (internal quotation marks and citation omitted)).  Following the passage of the Architectural Works Copyright Protection Act, "architectural works were added to the list of copyrightable works of authorship."  *Axelrod & Cherveny Architects, P.C. v. Winmar Homes*, No. 2:05-cv-711, 2007 WL 708798, at *2 (E.D.N.Y. Mar. 6, 2007) (citing 17 U.S.C. § 102(a)(8)); *see* 17 U.S.C. § 101 (defining an "architectural work" as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings").

Although "the overall form as well as the arrangement and composition of spaces and elements" are included in the definition, *see* 17

13

U.S.C. § 101, "[s]tandard configurations of spaces, and individual standard features, such as windows, doors, and other staple building components," are explicitly excluded, *see* 37 C.F.R. § 202.11(d)(2).  "The scope of protection for architectural works is further limited by the merger doctrine, which recognizes that certain ideas can only be expressed in a very limited number of ways." *Zalewski v. T.P. Builders, Inc.*, 875 F. Supp. 2d 135, 145 (N.D.N.Y. 2012), *aff'd sub nom. Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95 (2d Cir. 2014) (internal quotation marks and citation omitted). However, "creativity in architecture frequently takes the form of a selection, coordination, or arrangement of unprotectible elements into an original, protectible whole." *Id.* (citation omitted).  Thus, irrespective of the protection accorded to the individual design elements, "the gestalt of the plans" are protected.  *Axelrod*, 2007 WL 708798, at *11.

Defendants contend that plaintiffs' works constitute "a very basic and conceptual outline of a two-level, three-bedroom, three-and-one-half bath home in a colonial style," and "to the extent the home design called for any customization, [p]laintiffs' efforts were dictated by the Sollecitos' express wishes."  (Dkt. No. 31, Attach. 1 at 13; Dkt. No. 35, Attach. 2 at 12.)  In response, plaintiffs argue that defendants "over simplify" plaintiffs' works

14

and that the amended complaint alleges home designs that have an

"arrangement and composition of space and design[] [that] is protectibly

different from that of every home . . . defendants proffered to prove a

legally cognizable absence of originality."  (Dkt. No. 39, Attach. 23 at 14.)

At this early stage, the court is satisfied that plaintiffs have sufficiently

alleged that their designs and plans constitute original works under the

Copyright Act.  Accepting plaintiffs' allegations as true, plaintiffs' works are

designs and plans for the construction of a unique home designed

specifically for the Sollecitos, with distinct features, and which, as a whole,

are an expression of plaintiffs' creativity and sense of design.  Although the

designs encompass common features of a home, it is the unique selection

and arrangement of the common features that are original, and, thus,

protectible at this stage.  *See Ranieri v. Adirondack Dev. Grp., LLC*, 164 F.

Supp. 3d 305, 333 (N.D.N.Y. 2016) ("[T]he Court finds that the overall

configuration of Plaintiff's designs meet the low threshold of creativity

required for protection under the Copyright Act."); *Zalewski,* 875 F. Supp.

2d at 146 ("[T]he requisite level of creativity here lies in the combination

and arrangements of otherwise unprotected features.  Accordingly, the

court concludes that the scope of the copyright protection in this case is

15

limited to the way in which plaintiffs selected, coordinated[,] and arranged
unprotectible elements into an original, protectible whole." (internal
quotation marks and citations omitted)).

Further, even if the Sollecitos' directed plaintiffs to design the home a
certain way, it was plaintiffs who turned Sollecitos' ideas into protectible
works.  *See 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 258 (2d Cir.
2015) ("[T]he author is the party who actually creates the work, that is, the
person who translates an idea into a fixed, tangible expression entitled to
copyright protection." (quoting *Cmty. for Creative Non-Violence v. Reid*,
490 U.S. 730, 737 (1989)).

4.    *Substantial Similarity*

Finally, defendants argue that they are entitled to judgment as to
plaintiffs' copyright infringement claim because they did not wrongfully copy
plaintiffs' designs and plans, as a comparison of plaintiffs' drawings and
defendants' drawings reveals numerous differences between the two.
(Dkt. No. 31, Attach. 1 at 14-16; Dkt. No. 35, Attach. 2 at 12-14.)  In
response, plaintiffs argue the opposite: "Upon comparison of plaintiffs'
drawings and the infringing drawings, substantial similarity will be obvious
to the [c]ourt," and they add that, due to the fact-based nature of the

determination of whether works are substantially similar, the court should deny defendants' motions for judgment on the pleadings at this early juncture.  (Dkt. No. 39, Attach. 23 at 16-20.)

"The test for infringement of a copyright is of necessity vague." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (citation omitted).  And "[t]he determination of the extent of similarity that will constitute a *substantial*, and hence infringing, similarity presents one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations."  *Id.* (citation omitted). Accordingly, this determination has "traditionally been reserved for the trier of fact."  *Id.* (citations omitted).  However, in certain circumstances, district courts can decide substantial similarity at the pleadings stage, "either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar."  *Id.* at 63-64 (citations omitted).

"The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as

the same." *Id.* at 66 (internal quotation marks and citation omitted).  In applying this test, the court asks "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Id.* (internal quotation marks and citation omitted).

After reviewing defendants' and plaintiffs' works, (Dkt. No. 24, Attachs. 3-6), and accepting plaintiffs' allegations as true, the court is satisfied that plaintiffs' have set forth sufficient allegations to establish, at this time, that an ordinary observer could conclude that defendants' designs were appropriated from plaintiffs' copyrighted designs, and that defendants wrongfully copied such copyrighted designs.  Without the benefit of a more developed record, the court is satisfied that an ordinary observer *could* conclude that plaintiffs' and defendants' designs for the exterior and interior of the home embody a similar "total concept and overall feel," notwithstanding some differences as to the intricacies of the designs.  *See Peter F. Gaito Architecture*, 602 F.3d at 66 (citations omitted).

Accordingly, the court cannot determine at this early stage that the designs are not substantially similar, and, thus, defendants' motions for judgment on the pleadings as to plaintiffs' copyright infringement claim are

18

denied.  *See Pilla v. Gilat*, No. 19-CV-2255, 2020 WL 1309086, at *7 (S.D.N.Y. Mar. 19, 2020) ("Although there are certainly differences between the two sets of designs[,] . . . at this early stage, the Court cannot conclude as a matter of law that the works as a whole are not substantially similar.  With respect to some of Plaintiff's Designs, an average lay observer could recognize the alleged copy as having been appropriated from the copyrighted work." (internal quotation marks, alterations, and citations omitted)).

     *5.     Contributory and Vicarious Copyright Infringement Claims*

     Defendants move for judgment on the pleadings as to plaintiffs' contributory copyright infringement and vicarious copyright infringement claims.  (Dkt. No. 31, Attach. 1 at 16-17; Dkt. No. 35, Attach. 2 at 15-16.) In so doing, the Sollecitos rely on the court's dismissal of plaintiffs' copyright infringement claim, and argue that, because they are entitled to judgment as to that claim, they are necessarily entitled to judgment as to plaintiffs' contributory and vicarious copyright infringement claims as well. (Dkt. No. 35, Attach. 2 at 15.)  Because plaintiffs' copyright infringement claim survives this Memorandum-Decision and Order, the Sollecitos' argument is rejected and their motion as to these claims is denied.

The remaining defendants argue that they are entitled to judgment because plaintiffs have not shown that these defendants "had knowledge of any infringing activity"; "induced, encouraged, or assisted other[s] in infringing"; "supervised infringing activity"; or "profited from direct infringement."  (Dkt. No. 31, Attach. 1 at 17.)

"While the Copyright Act does not create liability for contributory, vicarious, or inducement of copyright infringement, 'the common-law doctrine that one who knowingly participates or furthers a tortious act is jointly and severally liable with the prime tortfeasor.'"  *Brown v. Netflix, Inc.*, No. 19 Civ. 1507, 2020 WL 2749571, at *7 (S.D.N.Y. May 27, 2020) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010)). A defendant "infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (citation omitted).

Here, at this early stage, plaintiffs have alleged sufficient facts to maintain claims of contributory and vicarious copyright infringement against defendants.  As argued by plaintiffs, (Dkt. No. 39, Attach. 23 at 22),

accepting their allegations as true, the facts presented throughout the amended complaint establish that defendants had access to the copyrighted works, induced direct infringement, and derived financial benefit from copying such works, if only just barely.  Accordingly, defendants' motions for judgment on the pleadings as to these claims are denied.

**B.    Lanham Act**

Plaintiffs bring an unfair competition claim pursuant to the Lanham Act against all defendants.  (Am. Compl. ¶¶ 53-61.)  To state such a claim, a plaintiff must show that "(1) it has a valid trademark or service mark entitled to protection, and (2) the defendant's use of a similar mark is likely to cause confusion among consumers as to the origin of the goods or services." *Pilla*, 2020 WL 1309086, at *9 (citations omitted); *see Ranieri*, 164 F. Supp. 3d at 354 ("The Lanham Act makes actionable false or misleading representations that are likely to cause confusion or deception as to the origin of goods or services." (citation omitted)).

However, the Lanham Act "does not protect the content of a creative work of artistic expression because an artist's right in an abstract design or other creative work is protected by copyright law." *Ward v. Andrews*

21

*McMeel Pub., LLC*, 963 F. Supp. 2d 222, 235 (S.D.N.Y. 2013) (internal

quotation marks and citation omitted).  To be sure, the Act only covers "the

producer of the tangible goods that are offered for sale, and not . . . the

author of any idea, concept, or communication embodied in those goods."

*Dastar Corp v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003)

(citation omitted); *see Ranieri*, 164 F. Supp. 3d at 354 (applying this rule to

architectural works).

 As argued by defendants, (Dkt. No. 31, Attach. 1 at 17-19; Dkt.

No. 35, Attach. 2 at 16-17), the facts in support of plaintiffs' claim do not

involve tangible goods; rather, the gravamen of the claim is the allegedly

wrongful use of plaintiffs' artistic expression—architectural designs and

plans, (Am. Compl. ¶¶ 53-61).  Accordingly, defendants are entitled to

judgment as to plaintiffs' Lanham Act claim, and the claim is dismissed.

*See Radolf v. Univ. of Ct.*, 364 F. Supp. 2d 204, 222 (D. Conn. 2005)

("[B]ecause [plaintiff]'s claim centers around his contention that he was the

'author' or originator of the ideas and concepts that underlie the [disputed

work], his Lanham Act claim necessarily fails in light of *Dastar*."); *Carroll v.

Kahn*, 03-CV-0656, 2003 WL 22327299, at *5 (N.D.N.Y. Oct. 9, 2003) ("A

Lanham Act claim based on Defendants' alleged failure to give Plaintiff

22

proper credit as author and/or producer . . . is foreclosed by *Dastar*."

(citation omitted)).

**C.   State Law Claims**

*1.   New York Unfair Trade Practices Act*

Plaintiffs bring a claim for unfair trade practices pursuant to N.Y.

Gen. Bus. Law § 349.  (Am. Compl. ¶¶ 66-68.)  Defendants argue that they

are entitled to judgment as to this claim because, among other things,

plaintiffs' allegations do not suggest any consumer-related injury, or

consumer-oriented deceptive conduct.  (Dkt. No. 31, Attach. 1 at 19; Dkt.

No. 35, Attach. 2 at 17-18.)  In response, plaintiffs contend, without

explanation, that defendants have not met their burden, and that dismissal

is not warranted at this early juncture.  (Dkt. No. 39, Attach. 23 at 23.)

"Section 349 of the New York General Business Law is a consumer

protection statute," providing that "[d]eceptive acts or practices in the

conduct of any business, trade or commerce or in the furnishing of any

service in [New York] are . . . unlawful."  *Ranieri*, 164 F. Supp. 3d at 356

(citing N.Y. Gen. Bus. Law § 349(a)) (other citation omitted).

Consequently, "a plaintiff proceeding under section 349 'must demonstrate

that the acts or practices [complained of] have a broader impact on

23

consumers at large.'"  *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F.Supp. 2d 194, 204 (E.D.N.Y. 2010) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995)).  "Consumers in this context are defined as 'those who purchase goods and services for personal, family or household use.'"  *Id.* (quoting *Sheth v. N.Y. Life Ins. Co.*, 273 A.D.2d 72, 73 (1st Dep't 2000)).

Although corporate competitors may have standing to sue under Section 349, the crux of such claim must be "consumer injury or harm to the public interest[;] . . . where the dispute is between competitors and the core of the claim is harm to another business as opposed to consumers, courts have found that the public harm is too insubstantial."  *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 247 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see Oswego*, 85 N.Y.2d at 25 ("Private contract disputes, unique to the parties, . . . [do] not fall within the ambit of the statute." (citation omitted)).

Here, as argued by defendants, (Dkt. No. 31, Attach. 1 at 19; Dkt. No. 35, Attach. 2 at 17-18), plaintiffs have failed to allege facts suggesting that their alleged harm is a consumer injury or that defendants' conduct constitutes consumer-related deception.  And plaintiffs do not argue

otherwise.  (Dkt. No. 39, Attach. 23 at 23.)  Indeed, plaintiffs' claim is

based on a private contract dispute unique to the parties.  Accordingly,

defendants are entitled to judgment as to plaintiffs' unfair trade practices

claim, and the claim is dismissed.

    *2.   Unjust Enrichment*

Plaintiffs bring an unjust enrichment claim against all defendants

pursuant to New York state law.  (Am. Compl. ¶¶ 69-72.)  The basic

elements of an unjust enrichment claim in New York are that "(1) defendant

was enriched, (2) at plaintiff's expense, and (3) equity and good

conscience militate against permitting defendant to retain what plaintiff is

seeking to recover."  *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373

F.3d 296, 306 (2d Cir. 2004) (citing *Clark v. Daby*, 300 A.D.2d 732, 751 (3d

Dep't 2002)).

Defendants argue that plaintiffs' unjust enrichment claim is

preempted by their copyright claims.  (Dkt. No. 31, Attach. 1 at 20; Dkt. No.

35, Attach. 2 at 19-20.)  In response, plaintiffs conclusorily argue that the

unjust enrichment claim is "qualitatively different," and, thus, not

preempted.  (Dkt. No. 39, Attach. 23 at 24.)

The Copyright Act preempts a state law claim when the following

circumstances are present: "(1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106."  *Miller v. Holtzbrinck Publishers, L.L.C.*, 377 F. App'x 72, 73 (2d Cir. 2010) (internal quotation marks and citation omitted).  In applying this standard, the Second Circuit takes "a restrictive view of what extra elements transform an otherwise equivalent [state law] claim into one that is qualitatively different from a copyright infringement claim."  *Briarpatch*, 373 F.3d at 306 (citation omitted).  "To determine whether a claim is qualitatively different, [courts] look at what the plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced."  *Id.* (internal quotation marks and citation omitted); *see Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 48 (2d Cir. 2019) ("A state law right is equivalent to one of the exclusive rights of copyright if it may be abridged by an act which, in and of itself, would infringe one of the exclusive rights." (citation omitted)).

"Where the gravamen of an unjust enrichment claim is that

defendants unjustly benefitted from unauthorized use of a work within the scope of the Copyright Act[,] . . . the claim is preempted." *Stanacard, LLC v. Rubard, LLC*, No. 12 Civ. 5176, 2016 WL 462508, at *22 (S.D.N.Y. Feb. 3, 2016) (internal quotation marks and citation omitted); *see Panizza v. Mattel, Inc.*, No. 02CV7722, 2003 WL 22251317, at *4 (S.D.N.Y. Sept. 30, 2003) ("The overwhelming majority of courts in this [C]ircuit have held that an unjust enrichment claim based upon the copying of subject matter within the scope of the Copyright Act is preempted." (citations omitted)).

Indeed, "the Second Circuit and courts in this district have consistently held that th[e] enrichment element does not suffice to shield an unjust enrichment claim from preemption when the claim arises from unauthorized use of a copyrighted work." *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 321-22 (S.D.N.Y. 2010) (collecting cases); *see Puebla Palomo v. DeMaio*, 403 F. Supp. 3d 42, 75 (N.D.N.Y. 2019) ("The requirement that a defendant have been 'enriched' by the misappropriation of a copyrighted work is not enough to distinguish an unjust enrichment claim from copyright infringement." (citation omitted)).

Plaintiffs have provided no basis whatsoever to depart from this well-established precedent, except for a bare and conclusory statement

that their claim is "qualitatively different."  (Dkt. No. 39, Attach. 23 at 24.)

Indeed, the conduct alleged in support of their unjust enrichment claim is

the same conduct alleged in support of their copyright infringement

claim—that defendants unjustly benefitted from the use of plaintiffs'

copyrighted designs and plans.  (*Id.*; Am. Compl. ¶¶ 69-72.)  Accordingly,

defendants' motions for judgment on the pleadings as to plaintiffs' unjust

enrichment claim are granted, and the claim is dismissed.

> 3.   *Tortious Interference with Contract and Economic Advantage*

Plaintiffs bring a claim of tortious interference with contract against

DeRaven, Osborne-Heller, Hopper, and Doe, and a claim of tortious

interference with economic advantage against all defendants, both

pursuant to New York state law.  (Am. Compl. ¶¶ 81-89.)

In order to maintain a claim for tortious interference with contract

under New York law, plaintiffs must meet the following elements: "(1) the

existence of a valid contract between the plaintiff and a third party;

(2) defendant's knowledge of that contract; (3) defendant's intentional

procurement of the third-party's breach of the contract without justification;

(4) actual breach of the contract, and (5) damages resulting therefrom."

*Highland Capital Mgmt. LP v. Schneider*, 198 F. App'x 41, 46 (2d Cir.

2006) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 424 (1996)).  Similarly, the elements of a claim for tortious interference with economic advantage under New York law are: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."  *16 Casa Duse*, 791 F.3d at 261 (citation omitted).

Defendants argue that plaintiffs' tortious interference claims should be dismissed because, among other things, these claims are preempted by plaintiffs' copyright infringement claim.  (Dkt. No. 31, Attach. 1 at 21-22; Dkt. No. 35, Attach. 2 at 20-21.)  In response, plaintiffs, again, conclusorily assert that their tortious interference claims are "qualitatively different," and are, thus, not preempted.  (Dkt. No. 39, Attach. 23 at 23-24.)

"In the Second Circuit, it is well settled that claims for tortious interference based on the unauthorized publication of a work protected by the Copyright Act are preempted."  *Ranieri*, 164 F. Supp. 3d at 357 (citation omitted).  Additional elements such as awareness and intentional interference, although not part of a copyright infringement claim, go "to the scope of the right; [they] do[] not establish qualitatively different conduct on

29

the part of the infringing party, nor a fundamental nonequivalence between the state and federal rights implicated." *Ferrarini v. Irgit*, No. 19 Civ. 0096, 2020 WL 122987, at *7 (S.D.N.Y. Jan. 9, 2020) (citations omitted).

Here, as was the case with respect to their unjust enrichment claim, the conduct alleged in support of plaintiffs' tortious interference claims is the same conduct alleged in support of their copyright infringement claim—that defendants deprived plaintiffs of the benefits that were to be derived from their agreement with the Sollecitos due to defendants' use of plaintiffs' copyrighted designs and plans.  (Am. Compl. ¶¶ 81-89; Dkt. No. 39, Attach. 23 at 24.)

Accordingly, defendants' motions for judgment on the pleadings as to plaintiffs' tortious interference claims are granted, and these claims are dismissed.  *See Ranieri*, 164 F. Supp. 3d at 358 ("[Plaintiff's tortious interference] claims depend on Plaintiff's allegations that his designs were used and modified without his permission, he did not receive full compensation for their use, and his name and seal were removed from the final designs.  Under these circumstances, the Court finds that the preemption requirements are met and Plaintiff's tortious interference claims must therefore be dismissed." (citations omitted)); *Netzer v. Continuity*

30

*Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1322-23 (S.D.N.Y. 1997)

("[C]laims for tortious interference that are based on allegations of

unauthorized exploitation of copyrighted material are preempted by federal

copyright law." (citation omitted)).

> ### 4.   *Conspiracy*

Plaintiffs bring a conspiracy claim pursuant to New York state law

against all defendants.  (Am. Compl. ¶¶ 73-80.)  "It is well established that,

under New York law, a claim for civil conspiracy may stand only if it is

connected to a separate underlying tort."  *Ranieri*, 164 F. Supp. 3d at 358

(internal quotation marks and citations omitted); *see BAT, LLC v. TD Bank,*

*N.A.*, No. 15-CV-5839, 2018 WL 4693644, at *9 (E.D.N.Y. Sept. 28, 2018)

("Since civil conspiracy is a derivative claim under New York law, a claim

for conspiracy should be dismissed if the underlying tort claim either is not

adequately pleaded or has been dismissed." (citation omitted)).

Plaintiffs' conspiracy claim "is based upon [their claims of] tortious

interference with business relation/contract and interference with economic

advantage."  (Dkt. No. 39, Attach. 23 at 24.)  As argued by defendants,

(Dkt. No. 31, Attach. 1 at 21; Dkt. No. 35, Attach. 2 at 21-22), because they

are entitled to judgment as to plaintiffs' tortious interference claims,

plaintiffs' conspiracy claim must be dismissed as well.  *See Ranieri*, 164 F. Supp. 3d at 358.

**D.   Attorneys' Fees and Costs**

Defendants move for attorneys' fees and costs pursuant to 17 U.S.C. § 505.  (Dkt. No. 31, Attach. 1 at 23-25; Dkt. No. 35, Attach. 2 at 22-23.) Section 505 of the Copyright Act permits the court to award to "the prevailing party" their costs of suit, including attorneys' fees.  *See* 17 U.S.C. § 505.  Because defendants' motions for judgment on the pleadings are denied as to plaintiffs' copyright infringement claims, *see supra* Part IV.A, they are not prevailing parties within the meaning of the Copyright Act, and, thus, their requests for attorneys' fees and costs are denied.  *See Lisa Coppola LLC v. Higbee*, No. 1:19-cv-00678, 2020 WL 5350427, at *3 (W.D.N.Y. Sept. 4, 2020) ("If the [d]efendants are not 'prevailing parties' within the meaning of the statute, the instant motion must be denied without further analysis as this requirement is a statutory prerequisite to the requested relief." (citation omitted)).

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that DeRaven's, Oxborne-Heller's, and Hopper's motion

32

for judgment on the pleadings (Dkt. No. 31) is **GRANTED IN PART** and

**DENIED IN PART** as follows:

      **GRANTED** as to plaintiffs' (1) Lanham Act, (2) New York Unfair

      Trade Practices Act, (3) unjust enrichment, (4) tortious

      interference with contract/business relation, (5) tortious

      interference with economic advantage, and (6) conspiracy

      claims, which claims are **DISMISSED**; and

      **DENIED** in all other respects; and it is further

    **ORDERED** that the Sollecitos' motion for judgment on the pleadings

(Dkt. No. 35) is **GRANTED IN PART** and **DENIED IN PART** as follows:

      **GRANTED** as to plaintiffs' (1) Lanham Act, (2) New York Unfair

      Trade Practices Act, (3) unjust enrichment, (4) tortious

      interference with economic advantage, and (5) conspiracy

      claims, which claims are **DISMISSED**; and

      **DENIED** in all other respects; and it is further

    **ORDERED** that the following claims remain against DeRaven,

Oxborne-Heller, Hopper, and Doe: (1) a copyright infringement claim, (2) a

contributory copyright infringement claim, and (3) a vicarious copyright

infringement claim; and it is further

**ORDERED** that the following claims remain against the Sollecitos:

(1) a copyright infringement claim, (2) a contributory copyright infringement

claim, (3) a vicarious copyright infringement claim, and (4) a breach of

contract claim pursuant to New York State law; and it is further

**ORDERED** that plaintiffs' cross-motion to amend (Dkt. No. 39) is

**GRANTED**; and it is further

**ORDERED** that plaintiffs' shall file the second amended complaint,[7]

(Dkt. No. 39, Attach. 12), within seven (7) days of this Memorandum-

Decision and Order; and it is further

**ORDERED** that defendants shall respond to such second amended

complaint within the time allotted by the rules; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Christian

F. Hummel to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

October 28, 2020
Albany, New York

Gary L. Sharpe
U.S. District Judge

---

[7] Notably, the claims dismissed herein will remain dismissed upon the filing of plaintiffs'
second amended complaint.